```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS


ANDREW J. ANDERSON,            )
                               )
               Plaintiff,      )
                               )
vs.                            )    Case No. 06-1182-WEB
                               )
JO ANNE B. BARNHART,           )
COMMISSIONER OF                )
SOCIAL SECURITY,               )
                               )
               Defendant.      )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984

1

(10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. <u>Glenn</u>, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental

impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth

and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

Administrative law judge (ALJ) Melvin B. Werner issued his decision on November 16, 2005 (R. at 13-23). At step one, the ALJ found that plaintiff had not performed substantial gainful activity since his alleged onset date of August 31, 2002 (R. at 15). At step two, the ALJ stated that plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, anxiety and panic disorder (R. at 15-18). The ALJ

found no medical support for plaintiff's allegations of upper extremity neuropathy (R. at 18). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 18-20). After establishing plaintiff's RFC (R. at 20-21), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 21). At step five, the ALJ found that, based on the testimony of a vocational expert, that plaintiff could perform other jobs in significant numbers in the national economy. Therefore, the ALJ concluded that plaintiff was not disabled (R. at 22-23).

**I.  Did the ALJ give proper consideration to the opinions of treating and/or examining medical sources when making his RFC findings?**

The ALJ made the following RFC findings in this case:

> Upon careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity for a range of light work with lifting or carrying 20 pounds frequently and 25 pounds occasionally, standing or walking about 4 hours in an 8 hour work day with position change at 30 minutes intervals with no continuous crouching, crawling; occasional bending, stooping, squatting, climbing and no exposure to cold temperatures. Mental restrictions include moderate limitations in the ability to understand and remember detailed instructions, respond appropriately to changes in the work setting, and travel in unfamiliar places or use public transportation.

(R. at 20).

According to SSR 96-8p the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his

6

conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review.  Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  In the determination of issues reserved to the Commissioner, such as opinions regarding: whether an impairment meets or equals a listing, plaintiff's RFC, whether a plaintiff can do past relevant work, how age, education, and work experience apply, and whether a plaintiff is disabled, treating source opinions are not entitled to special significance or controlling weight.  Soc. Sec. Rul. 96-5p, (Medical Source Opinions on Issues Reserved to the Commissioner), 1996 WL 374183, at *2.  However, even on issues reserved to the Commissioner, including the RFC determination and the ultimate issue of disability, opinions from any medical source must be carefully

considered and **"must never be ignored"** (emphasis added).  Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.  It is clear legal error to ignore a medical opinion.  <u>Victory v. Barnhart</u>, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).  It is reversible error for the ALJ not to discuss uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects.  <u>Grogan v. Barnhart</u>, 399 F.3d 1257, 1266 (10th Cir. 2005).

In his RFC findings, the ALJ found that plaintiff was moderately limited in the ability to understand and remember detailed instructions, respond appropriately to changes in the work setting, and travel in unfamiliar places or use public transportation (R. at 20).  A mental RFC assessment form lists 20 categories of areas of impairment (R. at 257-258).  The 3 limitations noted by the ALJ in this case are category ## 3, 17 and 19 (R. at 257-258).

The state agency mental RFC consultative assessment found plaintiff moderately limited in his ability to interact appropriately with the general public (category # 12), but did not find him limited in any other category, including the 3 categories in which the ALJ found plaintiff moderately limited (R. at 257-258).  Thus, the ALJ offered no explanation for finding plaintiff moderately limited in 3 categories ## 3, 17, 19) even though the state medical consultant found no limitation

8

in those categories; the ALJ also failed to offer any explanation for rejecting the opinion of the state medical consultant that plaintiff was moderately limited in category # 12.

In the case of Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175 (D. Kan. 2003), the court held as follows:

> Many other inconsistencies exist between the ALJ's findings and the Assessment. The ALJ, however, never explains why he makes findings inconsistent with the Assessment nor does he even acknowledge that he is rejecting portions of the Assessment. He cites to no medical records, testimony, or other evidence in support of his RFC findings, other than the Assessment. And, he fails to explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. In short, the Court finds that the ALJ has failed to link his RFC determination with specific evidence in the record and has failed to comply with Social Security Ruling 96-8p.
>
> Due to these failures of the ALJ, the Court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. His bare conclusions are simply beyond meaningful judicial review. The Court therefore holds that the case must be remanded, and upon remand the Commissioner shall provide the proper narrative discussion describing how the evidence supports his conclusions at step four, as required by Social Security Ruling 96-8p, and how the inconsistencies or ambiguities in the evidence were considered and resolved. This shall include a discussion of the reasons supporting the ALJ's apparent rejection of certain findings of the State Agency Medical Consultants' Physical Residual Functional Capacity Assessment.

Brown, 245 F. Supp.2d at 1186-1187.

As in Brown, the ALJ in this case never explained why he made findings inconsistent with the state agency mental RFC assessment, and the ALJ did not cite to any medical records, testimony, or other evidence in support of his mental RFC findings. Thus, the court finds that the ALJ has failed to link his mental RFC determination with specific evidence in the record and has therefore failed to comply with SSR 96-8p. For these reasons, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. The ALJ's bare conclusions are beyond meaningful judicial review. Therefore, the case shall be remanded in order for the ALJ to comply with SSR 96-8p.[1]

The court also finds that the ALJ failed to consider other medical evidence which is clearly relevant to consideration of plaintiff's mental impairments and limitations. The ALJ noted that Dr. Berg performed a consultative mental examination on the plaintiff on March 23, 2004. The ALJ mentioned the diagnoses

---

[1] The court would also note that in the ALJ's questioning of the vocational expert (VE) at the hearing, he never included in any hypothetical question to the VE any of the mental limitations set forth in his decision or the mental limitation given by the state agency medical consultant. Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Commissioner's decision. Norris v. Apfel, 215 F.3d 1337 (table), 2000 WL 504882 at *5 (10th Cir. Apr. 28, 2000); Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991).

10

given by Dr. Berg, including Dr. Berg's finding that plaintiff had a GAF of 38. The ALJ then indicated that although this was an extremely low GAF, it was indicative of plaintiff's functioning on that day and is not reflected elsewhere in the medical notes (R. at 17).

However, not mentioned by the ALJ is a diagnostic intake update dated September 22, 2005 from the Mental Health Center of East Central Kansas. On that report, it indicates that plaintiff has a GAF of 48[2] (R. at 285). Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work. A claimant's impairment might lie solely with the social, rather than the occupational sphere.

---

[2]GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. The scores in this case represent the following:

> 41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job).
>
> 31-40: **Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work....

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

11

A GAF score of fifty or less, however, does suggest an inability to keep a job.  For this reason, such a GAF score should not be ignored.  <u>Lee v. Barnhart</u>, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004).

    The court finds that the ALJ's statement that the GAF score of 38 in March 2004 is not reflected elsewhere in the medical notes is contradicted by the medical evidence.  As noted above, treatment providers gave plaintiff a GAF score of 48 in September 2005.  Both scores suggest an inability to keep a job and should not be ignored.

    The ALJ failed to mention that the intake update of September 22, 2005 reported that plaintiff was severely functionally impaired in the following areas: anxiety, depression, mood and/or affect, suicidal ideations, and pattern of sleep (R. at 285).  The ALJ also failed to discuss the findings of Dr. Berg discussed under "ability to perform work-related activities."  Included in that analysis is this statement by Dr. Berg:

> The claimant is able to focus and concentrate on the most simple tasks and perform them at a rapid pace.  It is not clear as to what extent he is able to persist at these over an extended period of time due to his being subject to chronic pain and also anxiety.  It is noteworthy that even with a slight increase in the complexity of tasks, he is subject to making errors...
>
> Although the claimant is likeable and can behave in an appropriate manner, he is

> extremely handicapped as a result of his
> vulnerability to panic attacks. As a result,
> he rarely leaves his home environment and is
> very wary of situations where he might
> encounter strangers. He apparently only
> ventures into such situations unless he is
> accompanied by a trusted friend.

(R. at 241-242).

The ALJ mentioned the psychological evaluation from Dr. Ohlde, including his findings that plaintiff's attention, concentration, memory and social skills were adequate, and that he can understand and carry out simple instructions (R. at 17). However, the ALJ failed to mention that Dr. Ohlde also stated that plaintiff would probably have difficulty feeling comfortable enough to remain in a work setting for any length of time, sustaining concentration for longer periods of time, and doing tasks consistently due to his reported symptoms of anxiety (R. at 216).

Opinions from any medical source must be carefully considered and must never be ignored. The ALJ clearly erred by ignoring these opinions, and by failing to discuss why these opinions were not adopted when making his RFC findings. For this reason, the case must be remanded in order for the ALJ to consider all the medical evidence and specifically discuss the opinions set forth above when making his RFC findings.

Plaintiff also alleges error by the ALJ in his analysis of the physical RFC limitations set forth by Dr. Katt, plaintiff's

13

treating physician.[3]  The ALJ adopted some of Dr. Katt's limitations, but rejected the limitation to sitting for 15 minutes at a time for less than 1 hour in an 8 hour day because the ALJ found that this limitation was not supported in the treatment notes, plaintiff's daily activities, and because it was not observed at the hearing.  The ALJ also noted that the treatment notes did not indicate any restriction against reaching or handling, and the record did not reflect an inability to climb or balance (R. at 21).  Finally, the ALJ stated that Dr. Katt reported that the form was completed based on the claimant's statements (R. at 21).  Dr. Katt's medical notes on the day he completed the RFC assessment confirm this finding by the ALJ:

> Andrew is in mainly because he needs a form filled out for disability.  This is a form actually that his lawyers wanted done telling them how much he could lift, how many hours during the day he could work and do what kinds of activity.  **So I filled that out by asking him.**

(R. at 280, emphasis added).  If in fact the form was filled out simply by asking questions of the plaintiff and recording his answers, this would provide a valid basis for discounting the opinions expressed by Dr. Katt on the RFC form.

However, on remand, the ALJ should take into consideration the fact that Dr. Katt did indicate on the RFC assessment that his findings as to plaintiff's limitations were based on x-rays,

---

[3]Dr. Katt's RFC opinions can be found at R. at 281-282.

CT, MRI of back, and that plaintiff had a herniated disc (R. at 282). The ALJ should also take into consideration the observation of Dr. Katt on the date the assessment was completed that "He is still having difficulty sitting on the table more than five minutes at a time without having to get up and move around" (R. at 280). Contrary to the ALJ's statement that the sitting limitation was not supported in the treatment notes, the observation of Dr. Katt on the day the RFC assessment was made does provide some support for the sitting limitation given by Dr. Katt.

In light of the ambiguity concerning the basis for the opinions of Dr. Katt, and his failure to provide support for some of his opinions, the ALJ would be well advised to recontact Dr. Katt in order to resolve this ambiguity. In the case of <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir.2004), the court held that if the ALJ concluded that the treating physician had failed to provide sufficient support for his conclusions about claimant's limitations, the severity of those limitations, or the effect of those limitations on their ability to work, the ALJ should have recontacted the treating physician for clarification of his opinion before rejecting it. 20 C.F.R. § 404.1512(e)(1) (2006 at 356) and 20 C.F.R. § 416.912(e)(1) (2006 at 900) state:

> We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be

15

> resolved, the report does not contain all the
> necessary information, or does not appear to
> be based on medically acceptable clinical and
> laboratory diagnostic techniques.

In addition, SSR 96-5p states the following:

> Because treating source evidence (including
> opinion evidence) is important, if the
> evidence does not support a treating source's
> opinion on any issue reserved to the
> Commissioner and the adjudicator cannot
> ascertain the basis of the opinion from the
> case record, the adjudicator must make "every
> reasonable effort" to recontact the source
> for clarification of the reasons for the
> opinion.

1996 WL 374183 at *6.

**II.  Did the ALJ err in his credibility analysis?**

A reviewing court does not weigh the evidence and may not substitute its discretion for that of the agency.  Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in

evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

   Because this case is being remanded, the ALJ shall conduct a new credibility analysis after giving consideration to all the medical source evidence, as set forth above.  As part of that analysis, the ALJ must explain and support with substantial evidence which part(s) of plaintiff's testimony he did not believe, and why.

   IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set

forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on January 29, 2007.

                                          s/John Thomas Reid
                                          JOHN THOMAS REID
                                          United States Magistrate Judge